UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SISTER KATE REID and MEGAN HEENEY as Next Friends of A.O.A., et al., K.G.C., et al., Y.V.R.V., et al., D.D.A.S., S.A.H., M.E.M., et al., W.Q.M., et al., J.P.I., R.H.P., et al., M.H., et al., and A.C.C.D., et al., | ) ) ) ) ) ) | Case Nos.  4:11-CV-00044CDP 4:11-CV-00045CDP 4:11-CV-00046CDP 4:11-CV-00047CDP 4:11-CV-00048CDP 4:11-CV-00049CDP |
| Plaintiffs, | ) ) | 4:11-CV-00050CDP 4:11-CV-00052CDP |
| v. | ) ) | 4:11-CV-00055CDP 4:11-CV-00056CDP |
| DOE RUN RESOURCES CORPORATION, et al., | ) ) ) | 4:11-CV-00059CDP |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER ENJOINING DEFENDANTS FROM MAKING IMPROPER *EX PARTE* CONTACTS WITH PLAINTIFFS**

**I.      INTRODUCTION**

Plaintiffs Sister Kate Reid and Megan Heeney, Next Friends of A.O.A., K.G.C., A.C.C.D., J.P.I., M.H., S.A.H., Y.V.R.V., D.D.A.S., M.E.M., R.H.P., and W.G.M., et al., filed this action in state court as Next Friends of 35 Peruvian children (all of whom live in the immediate vicinity of a metallurgical complex located in La Oroya, Peru) against the entities and persons who have or had an interest in ownership, operation and/or control of the complex during the period of Plaintiffs' claimed injuries.  Plaintiffs allege that these Peruvian children have sustained permanent injuries from exposure to toxic emissions of lead and other harmful substances from the La Oroya metallurgical complex, operated by Defendants.

The Defendants have a history of making inappropriate coercive and threatening *ex parte* contact with similarly situated clients of the undersigned.[1] The threats and intimidation began soon after these cases were filed, and have continued in recent weeks. On November 15, 2010, Plaintiffs' counsel traveled to La Oroya with other attorneys who also represent similarly situated children who have been injured by toxic exposures from Defendants' lead smelter in La Oroya. The purpose of that trip was to meet with clients of the undersigned, including Plaintiffs, about the pending litigation. An initial meeting was planned for November 15, 2010, and additional meetings with the clients were scheduled for November 16 and 17. However, as a result of Defendants' intimidation tactics, these meetings were not possible. See Affidavit of Kristine Kraft, attached hereto as Exhibit A.

Upon arriving to Peru, the attorneys learned that Doe Run workers intended to arrange an organized demonstration against the attorneys during their visit to La Oroya. Id. Due to this information and the history of prior intimidation and serious threats by Defendants and/or their representatives in this case, the attorneys arranged for police protection for their trip. Id.  On the day that counsel was to meet with clients, a crowd of protesters did in fact gather outside of the area where the meeting was to be held. Id. Despite the presence of 45 police officers in full riot gear with assault rifles, the protestors blocked the entrance to the building, shaking signs and fists at the attorneys and yelling loudly at the attorneys. Id. Some pretended to throw objects to frighten the

---

[1] Plaintiffs' counsel points out that the subject of this Motion should not be construed as asserting that such prior or current improper contacts were made with the knowledge of or at the direction of counsel of record for Defendants.  Plaintiffs' counsel does not presently have knowledge or information suggesting the involvement of Defendants' counsel of record.  However, in the event discovery reveals that any counsel representing Defendants (whether of record in this case or not) authorized such conduct, either directly or indirectly, Plaintiffs submit that conduct violates Rule 4.2 of the Rules of Professional Conduct.  Certainly, Defendants' counsel will now take necessary steps to stop this conduct as required under the Rules of Professional Conduct.

attorneys. When the attorneys finally were able to enter the building, they found protesters inside as well. Id. It took nearly 40 minutes for the police and Spanish-speaking Peruvian attorneys to calm the crowd before the discussions could begin. Id.

The protesters were especially violent and threatening toward Archbishop Pedro Barreto, who has spoken out in favor of these lawsuits proceeding in the United States. They shouted verbal threats at him and acted with physical violence, kicking him and his vehicle as he left the auditorium. Id.; "The gas chamber with a view on the Andes," Nov. 20, 2010 interview with Archbishop Pedro Barreto, attached hereto as Exhibit B; "Peruvian archbishop reports harassment at news conference over smelter," Nov. 25, 2010 interview with Archbishop Pedro Barreto, attached hereto as Exhibit C.[2]

At the conclusion of the meeting, the attorneys were forced to exit through the rear of the building, rather than through the main doors of the building, on direction and escort from the police. Kraft affidavit, Ex. A. The attorneys were taken to the police station as it was unsafe to travel on the roads. The protestors followed the attorneys to the police station and continued to yell threats outside. Id. As a result of the threats and intimidation experienced at the meeting, the goals of the attorneys' entire trip were disrupted and could not be carried out. The attorneys were unable to meet with their clients individually, as those meetings could not occur without police protection. Id.

The threats have been relentless against Plaintiffs and clients of the undersigned since the November trip, as well as against Plaintiffs' counsel and staff in La Oroya. Parents of Plaintiffs and similarly situated clients have been victims of constant verbal

---

[2] While the article suggests that Plaintiffs' counsel called a news conference in La Oroya, this is incorrect. Plaintiffs' counsel intended only a group meeting with their clients, however, the meeting was instead viewed by the public as a news conference, due to public announcements that Doe Run operatives and others intended to arrange an organized demonstration at the meeting. See Exhibit A to Plaintiffs' Memorandum in Support.

and physical threats by Doe Run workers and their relatives, including threats that that the aggressors will "burn" them, cut their faces, throw stones at them, remove them from the city, and physical violence on the clients' pets. The aggressors have threatened that they will kill the plaintiffs when they learn their names. The threats have caused the clients fear for their physical safety and their lives, as well as those of their families. As a result of these threats, Plaintiffs and children of the clients cannot play outside in their yards, as they are unsafe there. See Exhibit D, affidavits of thirteen clients of the undersigned, attached hereto, filed under seal.

Plaintiffs' counsel's colleagues in La Oroya have also been victims of continuous threats and intimidation tactics. Rosario Galarza, Plaintiffs' counsel's assistant in Plaintiffs' counsel's La Oroya office, has been threatened verbally and physically since she began working with Plaintiffs' counsel. She has received verbal threats and intimidation in the market, park, and other places in La Oroya, however, the most concerning attacks have been more aggressive and more direct. See Affidavit of Rosario Renee Galarza Roque, attached hereto as Exhibit E. At approximately 2:00 am on November 16, 2010 (in the early morning hours following the aforementioned attorneys' meeting), Ms. Galarza and her spouse were awakened by kicks and yelling at the door of her home. Id. She was also present in Plaintiffs' counsel's La Oroya office when a group of Doe Run workers attacked the office on November 16, 2010 with kicking and yelling at the door. Fearing for her safety, she was forced to hide in a closet. See Police Reports, attached hereto as Exhibit F. Damage was done to the office door, requiring repairs. After these incidents, Ms. Galarza was forced to leave La Oroya for a few days, out of fear for her safety.

4

The La Oroya office was attacked again on December 23, causing additional damage. See Exhibits E and F. Multiple windows were broken and flyers that had been sent by Plaintiffs' counsel's assistants in La Oroya were torn and strewn about the area. Id. (including police photos showing damage to the building). The aggressors knew that the office would be unoccupied at that time, as the flyers had notified the public of a Christmas gathering with the La Oroya staff and mothers and children involved in the lawsuit. See Ex. E. These attacks have caused Ms. Galarza to fear for her life. Id. She believes that when the Doe Run workers attack in a group, they are capable of anything, and she fears that in an act of group violence, they will kill her or the mothers whose children are represented by Plaintiffs' counsel. Id.

The attacks have also resulted in the owner of the building in which the office is located requesting that Plaintiffs' counsel and their assistants vacate the property and end their lease. See Exhibit G. The owner is concerned that the Doe Run workers' attacks on the office verbal threats that towards the neighbors will result in further damage to the building, as well as retaliation against the owners. Id. The owners have requested that the office be vacated as soon as possible, and that in the meantime, the office not be opened to the public in order to avoid additional attacks. Id.

Threats and intimidation by Defendants and their representatives are not new to this case. These tactics have been occurring since similar cases were filed in October, 2007. On October 4, 2007, Plaintiffs Sister Kate Reid and Megan Heeney filed a lawsuit on behalf of 137 Peruvian children alleging the same causes of action alleged in the instant case. After filing that lawsuit, Plaintiffs' counsel discovered that Defendants initiated efforts through their employees, agents, and/or other representatives who are

5

located in La Oroya, to privately confront many clients of the undersigned and their families on a repeated basis regarding the subject matter of this case, *all without the consent or knowledge of the undersigned.*  Among other things, the undersigned learned that Doe Run's improper *ex parte* contacts with the families of the minor children consisted of a campaign designed to coerce and/or intimidate the plaintiffs into releasing their claims in this case and to fire counsel, with alleged promises that if they do give up their rights in the litigation, Doe Run will relocate their families to an area a short distance farther away from the metallurgical complex.

In many cases where family members of clients of the undersigned (usually fathers of the children) were employees of Doe Run, they were threatened by Doe Run with losing their jobs or other adverse employment actions if they failed to agree to withdraw from the pending litigation.  On December 3, 2007, Plaintiffs' counsel learned of another instance where Doe Run representatives exerted undue influence on their clients to dismiss their claims.  Specifically, Doe Run representatives and/or agents acting on their behalf again confronted a group of families whose fathers are employed by Doe Run, insisting that the clients take formal steps to withdraw from the litigation and refrain from pursing their legal rights to obtain recovery for their children's injuries sustained from lead poisoning caused by Doe Run's smelter. In other cases, Doe Run has, upon information and belief, also offered clients undisclosed amounts of money in exchange for releasing their claims or otherwise withdrawing from the pending lawsuit.  See Declaration of Attorney Victor Careaga attached as Exhibit "H".  In many cases, clients of the undersigned have advised counsel in the past that they are inclined or compelled to comply with Doe Run's propositions and Plaintiffs' counsel received a written request by

6

one family to withdraw from the litigation.  See client's letter, attached to Exhibit "H". As a result, in that case, the clients obtained a temporary restraining order on December 4, 2007, restraining Doe Run, their agents, representatives, and employees from making improper *ex parte* contacts with those clients.[3]

The intimidation tactics used by Doe Run continued and were again evident when a team of television producers and reporters visited La Oroya during the summer months of 2008 while documenting the extreme environmental contamination there and the plight of its citizens.  On multiple occasions, Doe Run security guards stopped the team and attempted to prevent their filming, despite official permission from the Peruvian Government to film in La Oroya.  Ultimately, one of the cameramen was attacked by an unidentified person.  See the video "La Oroya: A Poisoned Town, A Billionaire's Profit", attached as Exhibit I (specifically, minutes 11:58 through 13:55).

Notably, Plaintiffs' counsel makes clear that by this motion counsel does not seek to thwart any efforts by Doe Run to relocate Plaintiffs away from their La Oroya complex, as any distance that is farther away is better than in closer proximity.  However, Plaintiffs' counsel strongly opposes the inappropriate and unlawful techniques used by Doe Run designed to cause Plaintiffs irreparable harm by giving up their right to pursue their legal remedies or to interfere with the attorney-client relationship.

---

[3] That TRO was issued by Judge Catherine Perry in a case styled Sister Kate Reid, et al. v. Doe Run Resources Corporation, et al., Cause No. 4:08-CV-00525, which was subsequently dismissed without prejudice on August 5, 2008.  That TRO is thus not effective with regard to these Plaintiffs and the issuance of a duplicative order is necessary in this case to protect Plaintiffs' interests.  A copy of that TRO, Order Enjoining Defendants From Making Improper *Ex Parte* Contacts with Plaintiffs, is attached hereto as Exhibit J.

**II.    ARGUMENT**

    **A.    Standard for Injunctive Relief**

The issuance of injunctive relief is governed by Rule 65 of the Federal Rules of Civil Procedure.  In determining whether a temporary restraining order or other injunctive relief should issue, courts consider the following factors:  (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *see also Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997).  It is well-settled that no single factor is in itself dispositive, but instead each factor must be considered to determine whether the balance of equities weigh in favor of granting the injunctive relief.  *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993).

    **B.    Plaintiffs' Claims Against Defendants Have a Probability of Success on the Merits.**

Plaintiffs' claims are based on injuries they sustained as a result of toxic exposures to lead and other substances emitted from a metallurgical complex owned and operated by Defendants in La Oroya, Peru.  Each Plaintiff resides in close proximity to the complex.  Each Plaintiff in this case has blood lead concentrations at levels that have adversely affected their health.  Each Plaintiff has had blood tests, which reveal lead exposure levels far in excess of 10ug/dl, which is a level considered by many organizations, including the Missouri Department of Health, the Centers for Disease Control, and the World Health Organization, to require corrective action.  In fact, many

8

Plaintiffs have documented lead exposure levels in ranges that are three to four times the maximum acceptable limit of 10ug/dl.  Further, each plaintiff who has ingested these toxic lead emissions from Doe Run's lead smelting and mining facility has suffered a variety of physical injuries, including permanent damages to their circulatory system, reproductive system, and nervous system.

The Defendants in this case each have an ownership interest in the La Oroya complex and/or otherwise controlled or operated the complex during the time period that Plaintiffs seek recovery for damages they sustained from lead poisoning.  Plaintiffs' claims are based on theories of civil conspiracy, negligence, strict liability, and contribution based on tortuous conduct of entities acting in concert, as fully set forth in Plaintiffs' Second Amended Petition, which is incorporated herein by reference.

    **C.**    **Plaintiffs Will Be Irreparably Harmed If a Temporary Restraining Order is Not Issued Because Defendants' Improper *Ex Parte* Contacts Are Harassing and Designed to Intimidate Plaintiffs Into Not Pursing Their Claims For Relief in This Case.  Additionally, the Likelihood of Harm to Plaintiffs Outweighs any Potential Injury to Defendants.**

A preliminary injunction is proper upon a showing of immediate and irreparable injury.  *Pool v. Judge Northern, Circuit Court, Phelps County, et al.*, 504 F. Supp. 644 (E.D.Mo. 1980).  At present, it is unknown to Plaintiffs' counsel the number of different representatives of Doe Run and their exact relationship to Doe Run who have improperly confronted counsel's clients.  Regardless, the restraining Order sought by Plaintiffs can properly bind not only employees and agents of Doe Run, but also any persons acting in concert or participations with them.  See Fed. R. Civ. P. 65(d) (defining the persons bound by an order of injunctive relief includes also "those persons in active concert or

9

participation with them who receive actual notice of the order by personal service or otherwise.")

Here, the conduct that Defendants have engaged in is startling. The undertaking of efforts through Defendants' employees and/or representatives located in La Oroya, Peru to attack Plaintiffs' offices and assistants and to confront Plaintiffs' families with threats and propositions requiring them to dismiss their claims in the pending litigation and to fire counsel in order to be relocated to an area, only a distance of approximately three miles, which is purportedly safer, is outrageous. Doe Run's activities are done with an improper purpose, is harassing, oppressive, and unlawful. Many of the Plaintiffs have described Defendants' conduct as "stalking" in nature, in that they have been repeatedly contacted at various hours of the day and night. In fact, these contacts have created a chilling effect on Plaintiffs' rights in the instant action and are likely to result in precluding other potential Plaintiffs from initiating claims against Doe Run. As noted above, shortly after Doe Run began making improper contacts with Plaintiffs about releasing their claims, Plaintiffs' counsel received a first time written request by one of the Plaintiffs asking to be removed from the litigation. (See Ex. G., Affidavit of Victor Careaga and Exhibit "1" attached thereto).

The nature of the immediate and irreparable harm continues in other respects as well. These children cannot play in their own yards for fear of their safety. Their mothers fear for their lives. Plaintiffs' counsel cannot safely meet with their clients, or even hold an office in La Oroya. In many cases, family members of the Plaintiffs (usually fathers of the children) are employees of Doe Run. Many of these persons have been threatened by Doe Run with losing their jobs or other adverse employment actions if they fail to agree

10

to withdraw from the pending litigation.  These families are being faced with an ultimatum by Doe Run of either giving up the ability to put food on the table for their families or giving up their rights to pursue legal relief for the permanent physical injuries suffered by their children from Doe Run's smelter.

The entry of an injunction prohibiting this conduct, and protecting Plaintiffs from Defendants' oppressive and improper conduct, far outweighs any interest in not issuing such an order.  In fact, in this case, given the egregious conduct of Defendants, Plaintiffs' counsel is not aware of any conceivable injury to Defendants if a protective order were to issue.

### D. The Issuance of an Injunction Prohibiting Defendants from Making Improper Ex Parte Contacts with Plaintiffs Regarding the Subject Matter of this Case is in the Public Interest.

The last prong pertaining to whether an injunction should issue requires a showing that the issuance of the injunction is in the public interest.  Here, the public has an interest in the Courts taking action to restrain sophisticated Defendants from initiating attempts to strong-arm Plaintiffs, who are much less sophisticated and educated into believing that in order to have a sense of a more safe environment (which in this case is a fallacy in and of itself), they must give up the rights and protections afforded under the law to seek recovery for their injuries in this civil matter.  Such conduct should be prohibited.

## III.   CONCLUSION AND REQUESTED RELIEF

The conduct of Defendant Doe Run and the related defendants warrants the entry of a Temporary Restraining Order immediately restraining Defendants, including their

11

representatives, agents, employees, and others who may be acting in concert and/or in participation with them from the following activities:

(1) from contacting or communicating with Plaintiffs or their families in any manner whatsoever which involves acts of threats, intimidation, aggression or coercion and/or to requesting or suggesting in any way that Plaintiffs either directly or indirectly forego their right to pursue claims against these defendants;

(2) from contacting or communicating with Plaintiffs or their families in any manner whatsoever which relates to requesting or suggesting to Plaintiffs either directly or indirectly that they release or not pursue their claims in this lawsuit against Defendants;

(3) from contacting or communicating with Plaintiffs regarding the subject matter of this lawsuit without consent of Plaintiffs' counsel; and

(4) from coming within a 30 foot radius of Plaintiffs' counsel's office in LaOroya;

(5)  from coming within a 30 foot radius of the homes of Plaintiffs' counsel and staff that are located in LaOroya;  and

(6)  from contacting or communicating with Plaintiffs' counsel and staff in LaOroya in any manner whatsoever.

Plaintiffs' counsel also seeks the following additional relief:

1. Ordering Defendants within seven (7) days to inform Plaintiffs' counsel and the Court of all contacts made by Defendants and its agents since the filing of the instant lawsuit directly to Plaintiffs, including the names and job titles of each representative, employee, and/or agent who made such contacts, when such contacts were made, and the names of each Plaintiff contacted.

2. Ordering that the affidavits of Plaintiffs submitted in support of this Motion, *ex parte* (who have attested to the improper contacts by Doe Run's representatives, agents, and/or employees) be maintained **under seal.** Plaintiffs' counsel respectfully submits, upon information and belief, that such an Order is necessary and in the affiant's best interest in order to prevent disclosure to Doe Run representatives who may harass or retaliate against those persons who submitted affidavits.

3. To enter an Order expediting discovery in aid of the Injunction Hearing, to include an Order allowing Plaintiffs to take Rule 30(b)(6) depositions of one or more representatives of Defendants with knowledge and information, including documentation related to the improper contacts.

4. To expedite the setting of this matter for a Preliminary/Permanent Injunction Hearing.

WHEREFORE, Plaintiffs respectfully requests the relief requested herein and such other and further relief as the court deems appropriate.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

By: ___/s/Kristine K. Kraft___
ROGER C. DENTON  #137009
KRISTINE K. KRAFT  #22438
ELIZABETH WILKINS #61284
100 South 4th Street, Suite 900
St. Louis, MO 63102
(314) 621-6115
(314) 621-7151 (fax)
rdenton@uselaws.com
kkraft@uselaws.com
ewilkins@uselaws.com

13

Of Counsel:
JAY HALPERN and ASSOCIATES, P.A.
JAY HALPERN #260576 (Fla.)
VICTOR CAREAGA #624869 (Fla.)
150 Alhambra Circle, Suite 1100
Coral Gables, Florida 33134
(305) 445-1111
(305) 445-1169 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of January, 2011, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.


\_\_\_/s/ Kristine K. Kraft_____