**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SISTER KATE REID and MEGAN | ) | Case Nos. 4:11-CV-44-CDP |
| HEENEY as Next Friends of A.O.A., et | ) | 4:11-CV-45-CDP |
| al., | ) | 4:11-CV-46-CDP |
| | ) | 4:11-CV-47-CDP |
| Plaintiffs, | ) | 4:11-CV-48-CDP |
| | ) | 4:11-CV-49-CDP |
| v. | ) | 4:11-CV-50-CDP |
| | ) | 4:11-CV-52-CDP |
| THE DOE RUN RESOURCES | ) | 4:11-CV-55-CDP |
| CORPORATION, et al., | ) | 4:11-CV-56-CDP |
| | ) | 4:11-CV-59-CDP |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO
REMAND AND MOTION FOR SANCTIONS, ATTORNEYS' FEES, AND COSTS**

Defendants DR Acquisition Corp., The Renco Group, Inc., Renco Holdings, Inc., Ira L.

Rennert, The Doe Run Resources Corporation, Marvin K. Kaiser, Albert Bruce Neil, Jeffery L.

Zelms, Theodore P. Fox III and Daniel L. Vornberg (hereafter, the "Defendants") submit this

memorandum in opposition to Plaintiffs' Motion to Remand And Motion For Sanctions,

Attorneys' Fees, and Costs.

## I.     INTRODUCTION

Defendants removed this and ten companion cases from the Circuit Court of the City of

St. Louis to this Court under the Convention for the Recognition and Enforcement of Foreign

Arbitral Awards, 9 U.S.C. §§ 201, *et. seq.* ("CREFAA").  In these international toxic tort cases,

Plaintiffs assert that they have been injured by lead particulate and other substances released

from lead mining and smelting facilities operated in and around La Oroya, Peru.  The operation –

or "metallurgical complex" as it is referred to – is owned by Doe Run Peru, S.R. LTDA, a

Peruvian corporation (hereafter, "DRP").  Plaintiffs have not pursued DRP in this Court or in

Peru.  Instead they have chosen to sue certain investors in the company, along with the investors' directors and officers, claiming that the investors are directly liable as a result of managerial decision-making, some of it allegedly occurring in Missouri, or that the investors are derivatively liable under alter ego theories.  One of the Defendants, The Renco Group, Inc. ("Renco Group") has noticed arbitration naming, as respondent, the Peruvian national government, under an international trade agreement between Peru and the United States.  The first claim that Renco Group submits for arbitral decision is Peru's failure to honor its agreement to shield Renco Group and other investors (along with the investors' officers and employees) from Plaintiffs' claims in this Court by entering and defending them.  Because the arbitration will certainly impact and, ultimately, may determine the fate of Plaintiffs' claims, Plaintiffs' claims are "related to" an arbitration under the Convention and may be removed here.[1]

Plaintiffs contend that remand is required on four grounds: (1) that this is an improper successive removal; (2) that Defendants' waived their removal rights by their action in state court; (3) that the statute of limitations has expired on the international arbitration proceeding that is the basis for this removal under 9 U.S.C. § 205, the removal statute at issue here; and (4) that this action fails to satisfy the "relatedness" and "commercial nature" requirements of § 205, the removal statute at issue here.  As shown in this memorandum, these arguments are without

---

[1]    The arbitration may determine the final outcome of Plaintiffs' claims here because, as stated in Defendants' Notice of Removal, an award issued by the arbitration panel compelling Peru to defend and, if proven, pay its citizens' claims may lead this Court to defer to the courts of Peru under recognized principles of international comity.  Furthermore, once the government of Peru is in this litigation, whether in willing obedience to an arbitral ruling or unwillingly in response to a third-party complaint seeking to enforce the arbitral award, the government will have the right to invoke federal jurisdiction wholly independent of CREFAA.  For, under the Foreign Sovereign Immunities Act, 28 U.S.C. §1605(a)(6), it is clear that the government in virtue of the Treaty and Stock Transfer Agreement has waived its immunity and is subject to suit in American court; but, under FSIA, it is entitled to invoke federal jurisdiction.  So, one way or the other, it is clear that this litigation will land in federal court.

merit.  All eleven actions were properly and timely removed.  This Court should deny Plaintiffs'

Motion to Remand (and associated Motion for Sanctions).

## II.      PROCEDURAL HISTORY

Plaintiffs' recitation of the procedural history of these eleven cases contains many factual

errors.  Because Plaintiffs' arguments for remand hinge on these mischaracterizations of the

facts, including baseless allegations of purposeful delay by Defendants, it is necessary to provide

an accurate account of what has happened in these eleven cases, and in earlier related cases that

have been before the Court.

On October 4, 2007, counsel for the current Plaintiffs filed a personal injury lawsuit in

Missouri state court naming 137 Peruvians as plaintiffs against nine of the current Defendants.

That 2007 lawsuit alleged injury to these Peruvian citizens by exposure to toxic substances from

a La Oroya, Peru metallurgical facility owned and operated by Doe Run Peru, S.R.L., a Peruvian

company.  Plaintiffs did not sue Doe Run Peru but rather alleged that Defendants were the true

owners and operators of the La Oroya complex and caused plaintiffs' injuries.

Defendants in that initial case removed it to this Court on November 2, 2007 (4:07-CV-

1874-CDP), alleging federal question jurisdiction based on act of state doctrine, international

comity, and foreign policy considerations.  After plaintiffs had amended their petition a second

time, this Court remanded the case to state court for lack of subject matter jurisdiction on March

18, 2008.  In state court, plaintiffs voluntarily amended their petition yet again, adding The

Renco Group, Inc. ("Renco Group") as a defendant.  The newly named Renco Group removed

the case to this Court on April 16, 2008 (4:08-CV-525-CDP), on grounds that the case was a

qualifying mass action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  On August 3,

2008, just two days before their remand motion was scheduled to be heard, the plaintiffs

voluntarily dismissed their case.  Notably, this case has not been re-filed in Missouri or any other court, nor have any of the 137 plaintiffs in that case been named in any of the subsequent cases involved here.

Instead, on August 7, 2008, the same counsel filed two new cases in Missouri state court. These cases involved a total of seventeen (17) Peruvian plaintiffs and each of the ten Defendants named here.  These two cases, alleging the same facts and asserting the same claims as the 2007 case, were removed to this Court on September 17, 2008 (4:08-CV-1416-CDP and 4:08-CD-1420-CDP), with Defendants asserting diversity jurisdiction under CAFA and federal question jurisdiction under the federal common law of foreign relations.  This Court *sua sponte* remanded both cases to state court on October 9, 2008.

On November 21, 2008, back in state court, Defendants moved to transfer venue in these cases.  Counsel for Plaintiffs then filed another nine cases (involving a total of seventeen more plaintiffs) on December 9, 2008, which cases Defendants also moved to transfer.  Defendants did not attempt to remove any of these nine cases at that time in view of this Court's prior remand order.  (Around the same time, Defendants had also moved to dismiss all of these cases on a variety of grounds, including *forum non conveniens*.)  The parties were scheduled for hearing on the venue motion on March 13, 2009, and again on April 17, 2009, but the state court (Judge Sweeney) did not hear the motion until June 30, 2009.  Judge Sweeney subsequently recused himself in the spring of 2010 and the cases were reassigned to Judge Ohmer, with the venue motion reargued in July 2010.  The state court ultimately denied the venue motion on September 14, 2010.  Defendants thereafter sought review of this order through petitions for writ of prohibition to the appellate courts of Missouri.

During the pendency of the venue motion in state court, the La Oroya complex was forced to shut down in June 2009, and Doe Run Peru entered bankruptcy proceedings in Peru. Further, as explained to the Court at the January 11, 2011 hearing in this matter, The Renco Group (a U.S. investor in the La Oroya complex) has been attempting for many months to have the Republic of Peru fulfill its obligations with respect to the complex and the surrounding community, including remediating the soil and homes of La Oroya and defending and indemnifying claims such as those brought by Plaintiffs here.  Peru did not formally reject its obligations until November 26, 2010.  See Exhibit 1 attached hereto (Letter from Peru's Activos Mineros, dated November 26, 2010, with English translation).

In view of this formal refusal and the breakdown of negotiations with the Peruvian government, Renco Group gave notice of intention to commence arbitration on December 29, 2010, under the United States-Peru Trade Promotion Agreement (the "TPA"), seeking among other things an adjudication that the Republic of Peru is exclusively liable for any judgment that may be entered against any of the Defendants and their affiliates in these cases and a requirement that Peru appear in and defend these cases on behalf of Defendants.[2]  A little more than a week later, on January 7, 2011, defendants Renco Group, DR Acquisition Corp., Renco Holdings, Inc. and Ira L. Rennert removed these eleven cases pursuant to the Convention for the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), 9 U.S.C. § 201 et seq., which removal was consented to by the other named defendants The Doe Run Resources Corporation, Marvin K.  Kaiser, Albert Bruce Neil, Jeffery L. Zelms, Theodore P. Fox III, and Daniel L. Vornberg (collectively "Defendants").

---

[2] As discussed in more detail hereafter, the Trade Agreement, under which the Renco Group is currently seeking international arbitration, did not enter into force until February 1, 2009.  See Notice of Removal, ¶ 2; see also http://www.ustr.gov/countries-regions/americas/peru (last visited March 7, 2011); and see Proclamation No. 8341, 74 Fed. Reg. 4105 (January 16, 2009) (Implementing the United States-Peru Trade Promotion Agreement).

### III.    ARGUMENT

**A.  CREFAA'S GRANT OF REMOVAL JURISDICTION IS GENEROUS AND EXPANSIVE.  PLAINTIFFS' ARGUMENT OTHERWISE IS CONTRARY TO THE LAW OF EVERY CIRCUIT THAT HAS EXAMINED THE SCOPE OF CREFAA REMOVAL.**

As an initial matter, it is important to understand the nature and purpose of CREFAA, the statute under which the instant cases have been removed.  Understanding the overarching goal of the Convention and the ambit of its reach are vital to a correct interpretation of CREFAA's removal provisions.

Plaintiffs characterize CREFAA removal as narrowly confined and grudgingly permitted. Specifically, Plaintiffs argue that defendants have "attempt[ed] to mislead the Court by suggesting that CREFAA is interpreted broadly and removal thereunder is granted liberally," insisting that removal under CREFAA should be "restrictively interpreted so as to scrupulously confine removal jurisdiction" and "CREFAA must be read narrowly…and doubts resolved in favor of remanding the case to state court."  ("Memorandum In Support Of Plaintiffs' Motion To Remand and Motion For Sanctions, Attorneys' Fees, and Costs" (hereafter, "MIS")-9 (internal quotations and citations omitted)).

In fact, the United States Supreme Court has described the Convention as a clear and unequivocal expansion of federal jurisdiction granting the federal courts original jurisdiction to decide cases falling under the Convention or related to it.  *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1271 n. 9 (2009).  Moreover, the United States Courts of Appeals have uniformly held that the CREFAA removal statute, 9 U.S.C. § 205, is to be broadly construed, that the standard for removal is "easy" to satisfy, and that doubts with respect to these arbitration-based disputes are to be resolved in favor of a federal forum.  *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.

As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case."); *see also Infuturia Global Ltd. v. Sequus Pharm., Inc.*, ___ F.3d ___, No. 09-16378, 2011 WL 353214, *4, n. 5 (9th Cir. Feb. 7, 2011) (declining to narrowly construe § 205, adopting *Beiser's* easy standard, and holding: "Although we generally construe removal statues strictly, . . ., the plain language of § 205 provides federal court with remarkably broad removal authority[.]"); *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3rd. Cir. 2000) ("[A]rbitration is a federally favored forum, and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]") (internal quotations omitted); *see also Banco de Santander Cent. Hispano, S.A. v. Consalvi Int'l., Inc.*, 425 F. Supp.2d 421, 432 (S.D.N.Y. 2006) (after extensive analysis of Second Circuit CREFAA precedent, finding "[n]o one can seriously question that this comprehensive scheme was enacted to serve and promote incontestably federal goals on a comprehensive basis".) (internal quotes omitted).  Plaintiffs cite no circuit law contrary to the uniformly adopted *Beiser* rule broadly construing CREFAA's removal statute.

Moreover, Plaintiffs also ignore an additional policy favoring a federal forum, namely the federal policy favoring arbitration which "applies with special force in the field of international arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  Here a U.S. investor (Renco Group) and the Republic of Peru are participating in an international forum arbitration regarding differences arising under an international compact.  Allowing Plaintiffs' claims to proceed to judgment in state court will frustrate that process.  The powerful preference articulated in *Mitsubishi Motors* coupled with the breadth of CREFAA's reach requires that international arbitration proceed on the main track.

**B.    DEFENDANTS HAVE COMPLIED WITH THE REMOVAL PROCEDURE REQUIRED BY CREFAA; AND, EVEN IF DOCTRINES OF SUCCESSIVE REMOVAL AND WAIVER WERE APPLICABLE, THEY DO NOT BAR REMOVAL HERE.**

The Peruvian national plaintiffs assert that remand is required here because of two court-fashioned policies that, they contend, limit defendants' removal rights: the limitations on successive removals (MIS, 9-14), and the doctrine of waiver (MIS, 14-16). Plaintiffs' arguments on these points fail, first, because these doctrines simply do not apply to CREFAA removals. Congress did not intend to incorporate non-statutory law beyond the specific procedural requirements of the removal statute. This is consistent with the broad and sweeping mandate of CREFAA. Accordingly, court-fashioned, prudential limitations on removal jurisdiction like those expressed in the rule against successive removal and waiver – both judge-made restrictions not statutory defects - are not applicable to CREFAA removals. The key phrase in 9 U.S.C. § 205, "the procedure for removal of causes otherwise provided by law", means the procedures mandated by 28 U.S.C. §§ 1441 – 1452. *Transit Cas. Co. v. Certain Underwriters At Lloyd's, London*, 119 F.3d 619, 624-25 (8th Cir. 1997). Defendants followed those procedures in removing this case. The Court may not graft onto the statute additional requirements related to successive removals and waiver, when Congress did not do so in enacting CREFAA. To impose such limitations on CREFAA removals would be inconsistent with the broad purposes of the statute.

Moreover, even if limitations on successive removals and principles of waiver were somehow applicable here, they would not defeat removal. A second removal following a remand is not barred if on the second removal the defendant asserts a different ground for removal, one that the district court has not previously considered. CREFAA affords entirely different grounds for removal than the grounds for removal earlier asserted in these cases. The Defendants' right to CREFAA removal came about as a result of the inability of The Renco

Group and the government of Peru to reconcile their differences after an extended period of negotiations, and their CREFAA right to remove arose only when that occurred.  A second, further principle related to successive removals for which Plaintiffs argue--that a change in circumstances warrants a later removal only if the change was voluntarily effected by Plaintiff-- if it exists at all, does not apply to CREFAA cases.

Finally, there has been no waiver of Defendants' right to remove.  In CREFAA cases, contractual waiver is highly restricted and sparingly applied.  Non-contractual waiver arising from inconsistent conduct has almost never been recognized.  Even where courts apply waiver rules to restrict removal, actions of the kind that Defendants took in the state court here do not amount to a submission to state court jurisdiction.

### 1. Limitations on Removal Based on Successive Removals and Waiver Do Not Apply to CREFAA Cases.

Plaintiffs insist repeatedly that a removal under 9 U.S.C. § 205 is governed by "general removal standards" (MIS, 9 & 13, n. 24.)  Under "general removal law" plaintiffs include the bar on successive removal and waiver.  Both restrictions, plaintiffs argue, are at play here and militate for remand.

Defendants agree that general removal law is applicable except where it is inconsistent with the express provisions of CREFAA.  However, "General removal law" for this purpose means the procedures specified in 28 U.S.C. §§ 1441-1452.  The Eighth Circuit has made it clear that the "general removal law" that is incorporated by 9 U.S.C. § 205 consists of the express procedural requirements of the general removal statute, to the extent they are "otherwise applicable":

General removal law applies to cases which are removed under the Convention's removal provision because *§ 205 incorporates the "procedure for removal of causes otherwise provided by law," which means 28 U.S.C. §§ 1441-1452.* In the

- 9 -

> *Matter of Amoco Petroleum Additives Co.,* 964 F.2d at 712. In particular, this language includes § 1447(c), authorizing remand for defects in the removal procedure, and § 1447(d), blocking appellate review of remands issued under § 1447(c).   964 F.2d at 712; *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.,* 31 F.3d 70, 71 (2d Cir.1994). (emphasis supplied).

*Transit Cas.,* 119 F.3d at 625 (emphasis added).   Nothing in 28 U.S.C. §1441-1452 limits successive removal or says anything about waiver.  They are thus simply inapplicable here.

The line demarking a procedural defect in removal from a non-procedural is clearly drawn.  It separates remand orders that are appealable under 28 U.S.C. § 1447(c) from those that are not.  In that context, waiver is not a procedural defect.  *See e.g. Somoano v. Ryder Systems, Inc.*, 985 F.Supp. 1476, 1478 (S.D.Fla. 1998)("[A] defect in the removal procedure typically refers to a failure to comply with one or more of the procedural requirements specified in the text of the removal statutes.   Section 1446 does not make the absence of waiver an express procedural requirement for removal…"(citations omitted)).

 Most of the cases that Plaintiffs cite on this point involve remands based on failure to meet statutory requirements of 9 U.S.C. § 205 or 28 U.S.C. §§ 1441-1452, not the non-statutory grounds of waiver and limitations on successive removals that Plaintiffs advance here.  Many of those cases relate to the unanimity requirement that has been found to be required by 28 U.S.C. §§ 1441 and 1446; all defendants must join in a removal, or it is procedurally defective. *Employers Ins. of Wausau v. Certain Underwriters At Lloyd's, London*, 787 F. Supp. 165, 169 (W.D.Wis. 1992) (removal notice "was procedurally defective for failing to name all of the respondents in the state court action"); *Marine Solutions Serv., Inc. v. Ribelin Lowell & Co. Ins. Brokers of Alaska, Inc.*, No. A05-134 CV JWS, 2005 WL 1880618 *1-2 (D. Ala. July 27, 2005) (also based on unanimity requirement); *NPI, Inc. v. Pagoda Ventures, Ltd.*, 2008 WL 3387456, *9 (N.D. Okla. Aug. 8, 2008) (same); *Vistra Trust Co. v. Stoffel*, No. 09 Civ. 2844 9NRB, 2008 WL 5454126, *5-6 (S.D.N.Y. Dec. 29, 2008) (reading the unanimity rule as a procedural

requirement incorporated into § 205 by the wording "[t]he procedure for the removal of causes");

*Hobson v. Chase Home Fin., LLC,* No. 5:08-CV-288 (DCB) (JMR), 2009 WL 2849591, *3 (S.D. Miss. Sept. 1, 2009) (reading *Wausau* as directed at "defective removal *procedure.*") (emphasis added).

Absence of an unsuccessful prior removal and absence of waiver are not statutory requisites to removal, and so are not part of the "procedure for removal of causes otherwise provided by law" that is incorporated into § 205.  These doctrines therefore cannot be used as a basis to defeat this removal.

Plaintiffs make no argument that defendants' removal under § 205 was procedurally defective.  They point to no omission of any requirement for removal imposed by 28 U.S.C. §§ 1441-52.  Because Defendants' removal complied with "the procedure for the removal of causes" as required by 9 U.S.C. §205, plaintiffs' challenges to removal based on the rule against successive removal and on waiver are simply not cognizable.

### 2.    The Rule Prohibiting The Serial Removal Of Cases On The Same Ground Is Not Applicable Here.

Plaintiffs argue that removal under CREFAA was available to support defendants' earlier attempts to remove and, therefore, the current removal under CREFAA must fail because "a subsequent removal is not permitted where the grounds for the later removal existed at the time of the prior removal but were not raised in the prior removal."  (MIS, 10).  This argument applies to only two of the eleven cases now before the Court.  The other nine cases have never been removed.  As to these nine, the Court's task in deciding Plaintiffs' successive removal argument is easy – these cases have never been removed so the argument fails.

Even with respect to the two cases now before the Court that were previously removed, this argument is unavailing. Plaintiffs' argument on this point rests principally on *Employers Ins. of Wausau,* 787 F. Supp. 165 (MIS at 9-10, n.20).  But, the *Wausau* court's application of the rule concerning successive removals appears to be *dicta*.[3]   The *Wausau* removal was procedurally defective because not all defendants joined in the removal notice, and the remand was justified for that reason alone.  (Here, in contrast, all Defendants have joined in the removals of all eleven cases.)  Defendants' research discloses no later authority in which *Wausau* has been cited as a blanket prohibition precluding successive removals in CREFAA cases.  The correct statement of the general rule governing successive removals, rather, is:

> If subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible.

*Brown v. Jevic*, 575 F.3d 322, 328 (3rd Cir. 2009) (quoting 14C Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3739, at 495-96 (3d ed. 2008)).  As Judge Murphy in the Southern District of Illinois put it:  "Contrary to what Plaintiff seems to believe, there is no prohibition on serial removals of a case, provided, of course, that on a second removal. . . the

---

[3]  The district court's holding in *Employers Insurance of Wausau* is clearly *dicta* based on the court's own statement: "Although this finding alone [that § 205 requires unanimous joinder in removal] is a sufficient basis for ordering a remand to state court, I will decide the remaining issue."  787 F. Supp. at 169.  The Seventh Circuit declined to intervene, on the basis that the remand order was nonappealable and no grounds existed to issue a writ of mandamus.  *In re Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir. 1992).   Moreover, the *Wausau* court's  dicta on "one-shot" removals has been twice distinguished.  *See, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 & n. 2 (5th Cir. 1996) ("If the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata;" comparing its holding to *Wausau's* and distinguishing it).  Likewise, in *Sheinberg v. Princess Cruise Lines, Ltd.*, 269 F. Supp. 2d 1349, 1353 (S.D. Fla. 2003), the court read *Wausau* to mean that a second attempt to remove that lacked joinder by the same defendants absent from the first removal – that is to say was procedurally defective in the same way – was barred by the one-shot rule.  ("The Court also distinguishes [*Wausau*]. In [*Wausau*], the district judge concluded that removal under 9 U.S.C. § 205 requires that all defendants join in the notice of removal and that such removal is still governed by the 'one-shot at removal rule.'  787 F. Supp. at 168-170.  However, in that case, three defendants were never included in the three different Notice of Removals filed by the removing defendant.").

- 12 -

procedural and jurisdictional prerequisites for removal are satisfied." *Bourda v. Caliber Auto Transfer of St. Louis, Inc.*, No. 09-519-GPM, 2009 WL 2356141 *2 (S.D. Ill. July 31, 2009) (citations omitted).

Plaintiffs acknowledge that the rule against successive removals does not preclude a removal after remand if the second removal is based on a different theory of removal than the theory advanced to support the first removal. (MIS, p. 10, *citing Hammann v. U.S. Auto Ass'n*, No. Civ. A. SA-04-CA-0406, 2005 WL 354315, *6 (W.D. Tex. Jan. 18, 2005)). Plaintiffs correctly understand that the rule is operative only when the second removal is based on the same theory as the first, and asserts what is either the same factual predicate or a new predicate but one injected by the defendant. As discussed below, the inquiry on serial removal is whether the court is being asked to reconsider and overturn a prior ruling under the guise of a subsequent removal. Here, this Court is not being asked to upset any prior ruling on any issue of fact or law.[4]

Defendants assert a completely different theory of removal than they previously asserted: now they remove under CREFAA whereas previously they had removed based upon the applicability of international law or the Class Action Fairness Act. The events giving rise to the new removal occurred after the 2008 remand. *See* Notice of Removal ¶¶ 2-4, 22-24. The Trade Agreement under which the Arbitration is being commenced was not put in force until 2009, so that the Arbitration could not have been commenced at the time of the initial removal, even if

---

[4]     Plaintiffs appear to believe that when courts are discussing similar or dissimilar "theories" in the context of successive removal, the courts mean the broad heads of either federal question jurisdiction or diversity of citizenship. In Plaintiffs' view a litigant gets one try at removal under federal question jurisdiction (no matter what the particular grant of federal jurisdiction may be). If unsuccessful, the litigant is, thereafter, precluded from ever again removing under federal question jurisdiction even where the grant of federal jurisdiction forming the basis of the second removal is one not previously considered by the court. In this Plaintiffs are clearly wrong.

negotiations among the parties had deteriorated to the point where arbitration was necessary at that time, which they had not.

The Fifth Circuit's decision in *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) is a leading case on successive removals. In that case, the Court of Appeals made it clear that a successive removal is permissible if the factual basis for the second removal is different from the first. It distinguished *Wausau* on that basis. 72 F.3d at 493, n.2 ("Compare [Wausau](although the defendants presented a *new theory* for jurisdiction, they alleged the same factual ground asserted in the first petition…" (emphasis supplied).[5]

Applying *S.W.S. Erectors*, *Acosta v. Master Maintenance and Const., Inc.*, 52 F.Supp.2d 699, 702, n. 2 (M.D. La. 1999), *aff'd*, 452 F.3d 373 (5th Cir. 2006), rejected outright the notion that a defendant removing under CREFAA was precluded from so doing by the fact that the defendant had unsuccessfully attempted an earlier removal alleging diversity of citizenship. *Id.* at 702-705. In that case, Defendants had first removed the case on the basis of diversity of citizenship; they invoked CREFAA only in a later, second removal. *Id.* at 702-706. The district court held that the later removal was not barred by the earlier removal, which it found to be irrelevant. *Id.* at 702, n. 2.

Nowhere, however, in the Court's orders or in the Defendants' removal papers was CREFAA ever raised or considered as a basis for federal jurisdiction. Certainly, Defendants discussed the role of the Peruvian government in inducing Renco Group's initial investment in Doe Run Peru and Peru's on-going involvement in the operation of the La Oroya Metallurgical

---

[5]     It should be noted that along with the other grounds for distinguishing *Wausau*, the non-unanimous defendants in that case had attempted the first removal on a petition which had attempted to raise CREFAA. Three weeks after the first petition was remanded for lack of unanimity, the same non-unanimous defendants came back to the district court again, and, as they had the first time, attempted the second time to allege CREFAA jurisdiction – this to the obvious annoyance of the district judge. Thus, while technically the first petition was remanded for non-unanimity, in reality, the first petition tried to raise CREFAA just as the second.

Complex.  How could it be otherwise given the parties' mutual interdependency based on the nature of the deal that they struck?  But, the impact of arbitration on a determination of the rights of Doe Run Peru and the Peruvian government was never raised by the defendants or considered by the Court.

Plaintiffs make the puzzling argument that in this case Defendants' prior attempts to remove the two cases actually removed were based on the exact same ground as 9 U.S.C. § 205.  But, the second round of removals was based on CAFA and the federal common law of foreign relations.  This Court rejected the CAFA jurisdiction because on the face of Plaintiffs' complaint the Court could find no warrant for concluding that Plaintiffs' were attempting to gain class treatment for class members numbering in excess of the statutorily required 100.  The second ground, the federal common law of foreign relations, was, like CAFA, rejected under the well-pleaded complaint doctrine because the Court saw nothing on the face of Plaintiffs' complaint but allegations of state law claims.[6]

Doe Run Peru, its investors and the Peruvian government were involved in discussions seeking a mutually acceptable method for resolving the differences that had developed – particularly the need for Peru to absorb the third party liability posed by plaintiffs' claims.  At that time, the defendants assumed a posture toward the government that was pacific and conciliatory, as would any party to a foreign trade agreement during the incipient stage of a disagreement.

---

[6]    Plaintiffs cite the Court's finding that Plaintiffs raised only state law claims in their pleading as if it were a conclusive adjudication that, in fact, Plaintiffs were entitled to recover under Missouri tort law.  While Defendants will not presume to tell the Court what it intended to say in its order, Defendants read the Court's decision to be a finding that Plaintiffs' were *alleging* state law causes of action, not that they had a right to raise those claims.  Under the well-pleaded complaint rule, the Court was not permitted to peer beyond the allegations but was required to accept them as true.

Plaintiffs argue that the possibility of arbitration was something that defendants were aware of in 2008 and that the realization of that prospect does not qualify as a new event or circumstance permitting removal under CREFAA.

First of all, Defendants were not focused on arbitration, nor did they have reason to be. Defendants had good hope that, following negotiations, the government of Peru would live up to its responsibilities.  Second, Plaintiffs confuse the rules.  When courts speak of a "new factual basis" for the second removal, it is in cases where the second removal is premised on the same ground as the first (e.g. diversity of citizenship) but where the proof of the operative facts (e.g. the amount in controversy) is new and different.  *See Hammann*, 2005 WL 354315, *6 (citing *S.W. Erectors*, 72 F.3d at 492).  Here, removal is sought on an entirely new theory – CREFAA.  As in *Doe v. American Red Cross,* 14 F.3d 196, 200 (3d Cir. 1993), defendants are "neither appealing the first remand order nor seeking a second removal based on the same grounds as the first," but instead citing as their authority a "new and definitive source."

As *Doe* implies, the rule against successive removals is tied to concepts like law of the case and the need for finality.  The rule prevents a party from re-litigating issues that have been resolved and from judge-shopping for a favorable ruling to upset a prior adverse ruling on the same issue.  *See generally Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453 (7th Cir. 2005); *Doe v. American Red Cross*, 14 F.3d 196.

If defendants were asking the court to revisit its ruling on the numerosity of putative class members required by CAFA or asking the Court to consider new case law supporting their position on the federal common law of foreign relations, then they would be violating law of the case doctrine and seeking to re-litigate issues they had lost.  In that instance, the bar of successive removal could conceivably be applicable.  But, no aspect of the Court's prior ruling

on CAFA or foreign relations impacts the issues posed by CREFAA and no aspect of the Court's prior rulings are called into question.  *See*, *Alsup v. 3-Day Blinds, Inc.* 435 F. Supp.2d 838 (S.D.Ill. 2006)(first removal and remand based on the Bankruptcy Act and diversity of citizenship did not bar a second removal based on federal officer jurisdiction pursuant to 28 U.S.C. § 1442 even though the federal officer ground for removal was known but not raised at the time of the first removal.)

The underlying purpose of CREFAA would be very much thwarted by applying the rule against successive removals both on the particular facts of this case and generally.  In cases of international arbitration with ripples that affect outlying, satellite litigation, the arbitration proceeding and the outlying litigation will be moving separately and in different orbits. Requiring that a defendant remove to federal court under CREFAA whenever arbitration is a theoretical possibility on issues yet undeveloped would require a host of litigants to troop to federal court before arbitration was even a realistic prospect.  Federal courts would be required to adjudicate hypothetical possibilities of arbitral impact before the parties positions had come into sharp relief and before issues had crystallized.  This would not lead to efficient conservation of judicial resources.  Congress' generous allowance of time for the exercise of removal rights until trial surely was motivated, in part, by this consideration.

CREFAA is intended to channelize cases that might be affected by an arbitration under the Convention into federal courts where a uniform and predictable body of law can develop that will further the goals of international dispute resolution through arbitral mechanisms.  It was Congress' purpose that, right up until there is a non-arbitral adjudication on the merits, a litigant potentially affected by an arbitration ought to be able to remove his case to federal court.  To that end, Congress abrogated the 30 day removal deadline applicable to ordinary removals.  To apply

judge-created restrictions on successive removals so as to defeat the extended right to remove that Congress has expressly conferred on litigants potentially affected by international arbitration would be an unacceptable usurpation of Congress' legislative power.

Likewise, Plaintiffs' argument that the only change in circumstances that can make a successive removal appropriate is one caused by the Plaintiff (MIS 13) is without merit.  That is not a correct statement of the law of removal even in the non-CREFAA setting.  As *Jevic* states, a successive removal can be made possible by "subsequent pleadings or conduct by the parties or various other circumstances."  575 F.3d 322 (quoting 14C Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3739).  The notion that the subsequent event must be something outside of the removing defendant's control is an unsettled issue in the federal courts, but, whatever the resolution of that debate, it has no application in the case of a CREFAA removal. Under  CREFAA,  the case can be is removed within any time before trial and, therefore, the thirty day time limits contained in section 1446(b) do not come into play, including the subsequent occurrence language which has occasioned the voluntary/involuntary distinction. Whether a new thirty day removal clock has been started by a voluntary action of the plaintiff is, hence, irrelevant.

Nothing in the law related to successive removals requires a remand in the two out of eleven cases here that were previously removed.

   **3.**  **Defendants' Participation In State Court Proceedings Was Wholly Defensive And Did Not Seek Affirmative Adjudication; But Even If Otherwise, CREFAA Preserves A Defendant's Removal Rights All The Way Through The Litigation Process To Trial.**

Plaintiffs argue that Defendants waived their right to remove because: "[D]espite notice of the right to remove, the defendants waited for a dispositive motion to be decided before removing...Defendants' litigation of their motion to transfer venue is a clear and unequivocal

waiver of any right to remove this case." (MIS, 16.)  As they do throughout their brief, plaintiffs studiously disregard the very different policies underlying CREFAA and, therefore, disregard the very different treatment of removals pursuant to the Convention.

Even if the waiver doctrine were applicable as a "procedure for removal" – which it is not – and even if waiver were applied in the spirit of jealously guarding federal jurisdiction – the policy which CREFAA reverses –no intent to relinquish defendants' entitlement to a federal forum can be inferred from Defendants' participation in state court proceedings.

Plaintiffs argue that a defendant engaging in "substantive action" in state court waives his right to remove.  While, as a generality, Plaintiffs' statement of the law is not incorrect, a defendant's involvement in state court proceedings must, as the Eighth Circuit has held, "clearly indicate an intention to submit to the jurisdiction of the state court. That cannot be true when the act is not inconsistent with an intent to apply for removal."  *Genie Mach. Products, Inc. v. Midwestern Mach. Co.*, 367 F. Supp. 897, 899 (W.D. Mo. 1974) (internal citation omitted).  "A waiver of the right to removal must be 'clear and unequivocal.'"  *Wiggins v. Guardian Life Ins. Co. of Am.*, 820 F. Supp. 419, 422 (N.D. Iowa 1993), *quoting Weltman v. Silna,* 879 F.2d 425, 427 (8th Cir. 1989).  "It has been recognized on numerous occasions that actions which are preliminary and are not conclusive in character and which do not actually submit the merits of a claim for binding decision do not constitute a waiver of defendant's right to remove. . ."  *Beasley v. Union Pac. R.R. Co.,* 497 F.Supp. 213, 216 (D. Neb. 1980); *Ayes v. H&R of Belle Glade, Inc*., No. 08-21038-CIV, 2008 WL 1840714  (S.D. Fla. 2008) ("Although waiver of the right of removal is possible, the defendant's intent (to waive) must be clear and unequivocal.  Waiver will not occur by defensive action in the state court short of proceeding to an adjudication on the merits." (citations omitted)).

Here, Defendants' legal posture in the St. Louis Circuit Court proceedings has been, throughout, to oppose City Circuit Court jurisdiction, not to acquiesce in it.  To that end, Defendants challenged City venue and moved for the transfer of same to the County.  A motion attacking the venue of a case is in no way inconsistent with removal.  *Kemp v. Utah Constr. & Mining Co*, 225 F. Supp. 250, 253 (D. Ore. 1963) (motion seeking to change venue held not to waive removal); *Warner v. Crum & Forster Comm. Ins. Co.*, 839 F.Supp. 436, 439-40 (motion to transfer venue held not to waive removal: "In general, 'the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits.'  1A Moore, Federal *440 Practice ¶ 0.157[9] at 153 (1987).")

Plaintiffs claim that Defendants' motion to transfer venue to St. Louis County was a "dispositive" motion.  (MIS, 16.)  Defendants are baffled by this assertion.  "Dispositive" means an adjudication on the merits or so Defendants have always understood.  Moreover, Plaintiffs claim to have discerned that Defendants would have been happy to try their case in St. Louis County had they won their motion to transfer.  *Id.*  Plaintiffs' clairvoyance fails them. Defendants have challenged the jurisdiction of *any* Missouri court – indeed, any American court -- to try a case that clearly has no connection with any American tribunal and belongs in the judicial system of Peru.  Defendants have made clear that, if the case were to stay in the state court system and  if the case were transferred to a venue where statutory venue was proper under state law, Defendants would ask that Court to consider first a motion to dismiss based on *forum non conveniens* and other grounds.

Plaintiffs' waiver argument blankly ignores cases decided under CREFAA where waiver was raised.  For good reason.  Courts deciding CREFAA removal have uniformly and consistently ruled against waiver.  As was the case on the issue of successive removal, so on the

issue of waiver, the Congressional mandate that a CREFAA removal can be filed up until trial on the merits negates any argument for contraction of that time.

Thus, in *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 162 (3rd Cir. 2000), the court held that the level of a defendant's participation in state court proceedings is simply not relevant to its removal rights under CREFAA because of the extended time the defendant is given to remove. In *Suter*, the court disregarded the reinsurers extensive discovery practice in state court prior to filing its removal. Reaching the same result, the Ninth Circuit in its recent CREFAA decision, rejected the participation in state court as waiver argument, stating: "The meaning of this section [9 U.S.C. 205] is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated." *Infuturia Global, Ltd. v. Sequus Pharm., Inc.* ___ F.3d. ___, 2011 WL 353214 at *5. Similarly, in one of the cases that Plaintiffs rely on, *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.,* 31 F.3d 70, 72 (2d Cir. 1994), the Second Circuit in *dicta* suggested that any proceeding shy of an adjudication on the merits did not waive CREFAA removal. In interpreting the phrase, "any time before trial," in 9 U.S.C. § 205, the district court in *Acosta v. Master Maintenance & Constr. Co*, 52 F.Supp.2d 699, 705 (M.D. La 1999) held that no event in state court prior to removal – short of an adjudication on the merits – could operate to deny a defendant his right to remove under CREFAA. *And see Lannes v. Operators Intern.*, No. Civ. A. 04-584, 2004 WL 2984327 *12 (E.D. La. Dec. 20, 2004)(following *Acosta*, holding: "Although certain legal issues have been resolved in state court, movants have not identified any ruling in the state court which has resulted in a final determination of the plaintiff's claim." (citation omitted)).

When removal is pursuant to 9 U.S.C. § 205, waiver is inoperative.  *See e.g. Somoano v. Ryder Sys., Inc.*, 985 F. Supp. 1476, 1477 (S.D. Fla. 1998) ("[A] defect in the removal procedure typically refers to a failure to comply with one or more of the procedural requirements specified in the text of the removal statutes.  Section 1446 does not make the absence of waiver an express procedural requirement for removal . . ." (citations omitted)).

All of Plaintiffs' procedural arguments are without merit.  All Defendants timely joined in removal of this action.  The removal was effected by a Notice of Removal that met all statutory requirements, and that was filed within the time permitted by the statute; that is, "at any time before trial."  This is all that the law requires.

### C. THIS COURT SHOULD NOT INQUIRE INTO WHETHER DEFENDANTS' RIGHTS UNDER THE TRADE AGREEMENT ARE TIME BARRED, WHICH IS AN ISSUE EXCLUSIVELY ENTRUSTED TO THE INTERNATIONAL ARBITRAL BODY.

Plaintiffs ask the Court to venture beyond the question of removability and to decide the substantive issue of whether Defendant Renco Group's invocation of arbitration under the United States – Peru Trade Promotion Agreement is timely.  In advancing that position, Plaintiffs ignore the fact that whether a case is removable under CREFAA is to be determined on the face of the defendant's removal notice, not additional facts proffered by Plaintiffs outside that notice or the complaint.  *See* 9 U.S.C. § 205 ("[T]he ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.").

Plaintiffs argue that the arbitration provision of the TPA cannot be enforced by Defendants because their assertion of arbitral right is time-barred.   But under *Beiser's* easy - "could conceivably affect" - standard and crediting the allegations of Defendants' Notice, Plaintiffs' argument of untimeliness is not justiciable.  *See Beiser*, 284 F.3d at 670.  Whether Defendants can ultimately succeed in enforcing the TPA's arbitration clause cannot be considered in deciding whether removal under CREFAA is authorized but is an issue deferred to

another day.  *See QPro, Inc. v RTD Quality Serv. USA, Inc.*, 718 F.Supp.2d 817, 824 (S.D. Tex. 2010).

Furthermore, Plaintiffs' argument on untimeliness draws the Court directly into a fact-intensive determination as to when Renco Group should have been aware of the running of the limitation period and how it should have acted.  Even if the Court were competent to make that fact determination, the Court would be required to venture ever deeper and analyze and determine the requirements of international arbitration law.  Obviously, this is leagues beyond any inquiry a court is authorized to undertake in evaluating a removal under CREFAA.

Even if the Court were to reach the merits, the fact that the TPA did not enter into force until February 1, 2009 (*see* Defendants' Notice, ¶ 2), means that Renco Group's rights under the TPA could not even be invoked until that date.  In turn, it is inconceivable how CREFAA's three-year statute of limitations could have expired anytime before February 1, 2012.  This fact on its own defeats Plaintiffs' arguments in this regard.

Lastly, as a general proposition, whether one party's arbitral rights under an agreement have been timely raised is a threshold question committed to the arbitral body for decision, not to a judicial tribunal.  *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("Following this precedent, we find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge.  The time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.'")

**D.      CREFAA, 9 U.S.C. § 205, AUTHORIZES REMOVAL OF STATE COURT ACTIONS THAT ARE "RELATED TO" AN ARBITRATION PROVISION THAT FALLS UNDER CREFAA, IRRESPECTIVE OF CONTRACTUAL PRIVITY AND WHERE THE UNDERLYING ARBITRATION RELATIONSHIP IS COMMERCIAL.**

**1.      On the Face of Defendants' Notice, the TPA Arbitration Will "Conceivably Affect" the Outcome of the Plaintiffs' Case.**

The test for determining whether a state court claim "relates to" an arbitration agreement is easily satisfied in these eleven cases:

> [W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beiser*, 284 F.3d at 669 (original emphasis).

In the instant cases, as set forth in the Removal Notice and the associated Notice of Arbitration, Defendant Renco Group asserts that, pursuant to the TPA and the underlying agreements between Renco Group and the Republic of Peru, it is Peru, not Defendants, that is legally liable for its citizens' injuries and Peru is required to answer in a court for claims based on such alleged injuries. *See* Defendants' Notice, ¶ 29. This is a contention that an arbitration clause falling under the Convention provides a defense to Defendants and will thus "conceivably affect the outcome" of Plaintiffs' cases. As defendants indicated in their Notice, if they win the arbitration, the government of Peru will be sitting opposite the Plaintiffs in all further proceedings in this or any other courtroom, here in the United States or – more logically – in Peru. This is not just the "non-frivolous" or "plausible" suggestion of impact that *Beiser* requires. It is a real and case-changing impact - one that Plaintiffs do not deny. Rather,

Plaintiffs seek to engraft a requirement of contractual privity upon CREFAA that does not exist, as explained further below.

> ### 2. "Related To" Does Not Require a Showing of Contractual Privity or a Special Relationship.

Plaintiffs' position that the CREFAA removal statute, 9 U.S.C. § 205, imposes a relationship of contractual privity between a non-signatory and signatory to an arbitration agreement (or a relationship close enough to warrant holding the non-signatory bound) is unsupported by any guiding Circuit law.  In fact, the principal district court case relied upon by Plaintiffs for this argument has been specifically abrogated on this very point.

Plaintiffs strongly rely on *AtGames Holdings, Ltd. v. Radica Games, Ltd.*, 394 F.Supp.2d 1252 (C.D. Cal. 2005), for the proposition that their claims are not "related to" the TPA arbitration because there is not a contractual privity or other special relationship between themselves and the Republic of Peru as signatory to the TPA.  Plaintiffs single out the *AtGames Holdings* as a decision that "provides the proper analysis of the 'relate to' provision in a non-insurance case in which the non-signatory party is unrelated to any party to the arbitration agreement."  (MIS, 20-21.)  In *AtGames Holdings*, the district court remanded a CREFAA removal because the plaintiff was not a party to the arbitration agreement between defendant and a third-party.

However, *AtGames Holdings* was specifically abrogated by the Ninth Circuit on February 7, 2011, in *Infuturia Global, 2011 WL353214, *4.*  In *Infuturia*, the plaintiff cited *AtGames Holdings* as distinguishing *Beiser* and restricting the compass of "related to" by requiring privity of contract between a signatory and non-signatory to an arbitration agreement. The Ninth Circuit rejected this holding which, of course, is identical to Plaintiffs' position here:

> *AtGames* narrows the class of action removable under § 205 by *adding* privity of contract to the prerequisites for removal jurisdiction. This holding finds no support in the language of the statute. While *AtGames* would hinge jurisdiction on the relatedness of the parties, § 205 focuses only on the relatedness of the '*subject matter* of [the] action…to an arbitration agreement."' Further, although *AtGames* claims to be consistent with *Beiser*, nothing in *Beiser* suggests that only parties privy to an arbitration agreement or award falling under the Convention may seek removal under § 205. Rather, *Beiser* confers removal jurisdiction 'whenever an arbitration agreement…could *conceivably* affect the outcome of plaintiff's case….' 284 F.3d at 669. [. . . ] We find *AtGames* unpersuasive and decline to add any prerequisites to removal jurisdiction not expressed in the language of the statute."

2011 WL 353214, *4 (original emphasis).[7]

Thus, Plaintiffs' argument that "related to" requires contractual privity is unsupported by any persuasive Circuit law and indeed stands in contravention to the only Circuit law to date on this issue. Further, it should not be disputed that, as discussed above, a court deciding removal under § 205 simply cannot decide the merits of whether an arbitration provision is enforceable against a non-signatory. *See QPro, Inc., Inc.*, 718 F.Supp.2d at 824. As the district Court stated in *Lannes*: "[T]he question of whether a particular arbitration provision may ultimately be enforced or the question of whether a particular party may be compelled to arbitrate does not control the jurisdictional analysis because it 'has the disadvantage of frontloading a merits

---

[7] Plaintiffs also rely on *DP Solutions, Inc. v. Help Desk Now, Inc.*, 2008 WL 4543785 (M.D.N.C. Oct. 9, 2008). In *DP Solutions*, shareholders of DP formed a new company, defendant Help Desk, which they then sold to a third-party, X-plore Tech. The sale was consummated under an agreement that contained an arbitration clause requiring Help Desk and Xplore-Tech to arbitrate disputes. As part of the sale, Xplore-Tech assumed Help Desk's debts, including Help Desk's corporate indebtedness to the shareholders who had formed it, the individual plaintiffs. When Help Desk defaulted on its indebtedness to plaintiffs, the plaintiffs filed a state court action against Help Desk. Help Desk removed the case to federal court under CREFAA alleging that the arbitration agreement with Xplore-Tech gave rise to jurisdiction under the Convention. The district court remanded. The *DP Solutions* court found that: "No signatory to the purchase agreement seeks to compel arbitration. Second, reliance on the purchase agreement is not necessary to resolve the debt dispute between Help Desk and Plaintiffs." *Id.* at *3. *DP Solutions* (which has not been cited by any other court to date) is easily distinguishable on the grounds that a party to these proceedings (Renco Group) *has* initiated arbitration and because the arbitration will decide a central issue here: which party should appear, defend and, if Plaintiffs are successful, pay Plaintiffs' claims.

inquiry into the district court's examination of its jurisdiction.'"  *Lannes*, 2004 WL 2984327 at

*4 (quoting *Beiser,* 284 F.3d at 670).

### 3.     Arbitration Agreements Can Be Enforced Against Non-Signatories.

Plaintiffs readily concede an arbitration provision can be enforced against a non-signatory.  The Supreme Court recently addressed the issue and held that a non-signatory to an arbitration agreement can be bound under "traditional principles of state law [that] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009)(citation omitted).

Neither these principles nor the broader question of how and when international agreements govern the citizens of a contracting nation need detain the Court at this juncture.  It is sufficient to note that Plaintiffs are wrong when they try to limit enforcement of arbitration to privies and persons who – in Plaintiffs' words – have "close relationships" with a signatory. (MIS, 19).

And, briefly, on the issue of "close relationships", Plaintiffs try to distinguish cases like *Acosta* and *Lannes* on the grounds that in those cases the courts were enforcing against the non-signatory plaintiff an arbitration clause in an insurance contract.  Plaintiffs would contend that insurance relationships are special cases justifying the exception to the rule.  (MIS, 19-20).  But, the indemnification obligation between Peru and Defendants which is the subject of arbitration differs little from the indemnification obligation in an insurer's policy with his insured.  If the indemnification relationship between a signatory defendant and a third-party was sufficient in *Acosta* and *Lannes,* the same obligation justifies enforcement here.  Thus, even if Plaintiffs were

correct that a relationship of indemnitor to indemnitee makes enforcement of an arbitration provision equitable as a special case, that is the relationship that exists here.

Plaintiffs also argue that enforcement is equitable when the non-signatory himself tries to enforce the agreement containing the clause. In distinguishing *Lannes* from their cases here, Plaintiffs state: "Similarly, the *Lannes* court's decision was based on the fact that, 'although plaintiffs were not parties to the contract between [the named insured] and [the insurer], ***if they are going to try to enforce it,*** they are subject to its terms and to the international law governing its terms". (MIS, 19 (Plaintiffs' emphasis; citations omitted)). Justifying enforcement against a non-signatory based on the non-signatory's attempt to affirmatively invoke an agreement containing an arbitration clause proceeds from the doctrine of equitable estoppel.

Equitable estoppel is applied to enforce an arbitration agreement against a non-signatory when the non-signatory tries to reap the benefits of an agreement while side-stepping its detriments:

> [A] nonsignatory may be equitably estopped from challenging an agreement that includes an arbitration clause when that person embraces the agreement and directly benefits from it…By relying on provisions of the contract to form a claim, the nonsignatory has manifested an objective intent to be bound by the contract, even if subjectively he did not intend such.

Alexandra Hui, *Equitable Estoppel And The Compulsion Of Arbitration*, 60 Vand.L.Rev. 711, 727 (March 2007); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)("In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.").

Simultaneously invoking and repudiating the TPA is what Plaintiffs have attempted here. In "Plaintiffs' Memorandum In Opposition To Defendants' Renewed Motion To Dismiss Based On *Forum Non Conveniens* And Lack Of Standing To Sue As Next Friends," November 25, 2008, filed in the Circuit Court (attached hereto as Exhibit 2), Plaintiffs argued:

> Attached as Exhibit X is the United States-Peru Trade Promotion Agreement (TPA) which was signed by the United States and Peru on April 12, 2006. Chapter 18 of the TPA addresses agreement between the countries regarding the environment….Because of the rights granted by this treaty, Plaintiffs are entitled to the same level of deference that American citizens are entitled to with regard to a *forum non conveniens* motion.

*See* Exhibit 2[8] at 14 and at 61-62 (Chapter 18.4).  Although Plaintiffs misconceived Chapter 18.4 of the TPA as giving non-resident aliens the right to sue in American courts for injuries sustained in foreign lands at the hands of foreign actors (which Chapter 18.4 does not), they nonetheless urged the TPA as creating rights to which Plaintiffs could lay claim.  In a word, they sought the benefits of the TPA while trying to avoid – in their view – one of its limitations: the primacy of an arbitral determination of liability for third-party claims.

### 4.    Plaintiffs Are Not Asserting Missouri Common Law Claims Of Liability.

Threaded throughout much of Plaintiffs' argument is their complaint that rights arising under Missouri law are in danger of being deported to, or subjected to the influence of, a foreign tribunal.  Of course, the fact that Plaintiffs are all Peruvian nationals asserting injuries received in Peru caused by a Peruvian company seldom enters Plaintiffs' discourse.  As with other issues, the Court cannot get into choice of law determinations in deciding a CREFAA removal.  But, the

---

[8] Plaintiffs' Exhibit X to their Memorandum In Opposition To Defendants' Renewed Motion To Dismiss Based On *Forum Non Conveniens* And Lack Of Standing To Sue As Next Friends consisted of what appears to be the full text of the TPA.  Chapter 18 of the TPA has been excerpted from Plaintiffs' Exhibit X and included as part of Exhibit 2.  The full text of the TPA is available at: http://www.ustr.gov/trade-agreements/free-trade-agreements/peru-tpa/final-text (last visited March 7, 2011).

notion that Plaintiffs are asserting rights rooted in Missouri law and, therefore, deserve special sensitivity in the determination of the forum in which they should be required to proceed is fallacious.  In *Acapolon Corp v. Ralston Purina Co.,* 827 S.W.2d 189 (Mo. 1992), a Guatemalan corporation sued Ralston Purina here in St. Louis and Ralston's wholly-owned Guatemalan subsidiary for damages arising from shrimp feed formulated in St. Louis but manufactured and sold in Guatemala.  *Id.* 827 S.W.2d at 191-92.  The Missouri Supreme Court affirmed the Circuit Court's *forum non conveniens* dismissal.  Judge Blackmar found that neither the formulation of the product in St. Louis nor the fact that the Guatemalan subsidiary was owned and controlled by a St. Louis entity altered the center of gravity of the case.  *Id.* at 195-96.  Because the product was bought by a Guatemalan resident, from Guatemalan domiciled company, used in that country, and damages were incurred there, the case belonged in Guatemala.  *Id.* at 192-94.  Furthermore, under conflict of law principles, Judge Blackmar held that Guatemalan law, not Missouri law, would govern plaintiff's rights.  *Id.* at 194.

### D.  CREFAA, 9 U.S.C. § 202, REQUIRES THAT THE RELATIONSHIP OUT OF WHICH ARBITRATION GROWS, NOT THE UNDERLYING CLAIMS OF PLAINTIFFS, IS "COMMERCIAL."

Plaintiffs' secondary argument as to the nature of CREFAA removal is a clear misapprehension of the statute.  Plaintiffs argue that their claims against Defendants are not "commercial" in character and, therefore, do not fall under CREFAA's removal provision.  *See* Plaintiffs' Memo at 23.  (MIS, 23.)  Plaintiffs further contend that: "This provision [9 U.S.C. §202] requires that any state court proceeding sought to be removed under CREFAA must be commercial in nature." *Id.*

By its plain language, the CREFAA statute does not require the underlying state court proceeding to be "commercial" in nature.  Rather, 9 U.S.C § 202 reads: "An arbitration

agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." The phrase, "which is considered as commercial" modifies "legal relationship." Section 202's language requires that the association which brings the parties together and *out of which the arbitration agreement grows* must be a "commercial" relationship, *not* that the state court claims affected by the agreement be commercial. *See Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F. Supp. 1, 12-13 (S.D. N.Y.), *aff'd* 489 F.2d 1313 (2d Cir. 1973).

Plaintiffs rely upon *In the Matter of the Arbitration Between R3 Aerospace, Inc. and Marshall of Cambridge Aerospace LTD*, 927 F. Supp. 121 (S.D. N.Y. 1996). But that case, a confusingly written opinion, simply held that a state court disciplinary action against a law firm did not qualify as an arbitration arising out of a commercial relationship as required by the Convention. *Id*. at 123. This was based in part on the court's holding that ethical challenges under New York law could not, for one thing, be arbitrated. *Id*. Nor could the state bar disciplinary proceeding be considered as one that "related to" the arbitration under § 205 because a fight over which law firm could represent a party to an arbitration did not "relate to" the arbitration itself as the resolution of an arbitration arising out of a deal to modify aircraft could have no impact on the wholly unrelated question of whether a law firm was conflicted out of representing a party under New York's rules of professional responsibility. *Id*. at 125.

That CREFAA does not require that claims "related to" an arbitration be commercial is evident in the number of cases where personal injury claims under state tort law have clearly been held removable under § 205. *See, e.g.*, *Acosta*, 52 F. Supp. 2d at 706-77; *Lannes*, 2004 WL 2984327 at *4-5. Nevertheless, in this instance the claims that are the subject of the arbitration

between Renco Group and Peru are inherently commercial by virtue of the fact that they fall within the purview of the TPA, which states:  "[a] claim that is submitted to arbitration under [Section B of Article 10 (Investor-State Dispute Settlement)] shall be considered to arise out of a commercial relationship or transaction for purposes of Article I of the New York Convention.[9]"  *See* United States-Peru Trade Promotion Agreement, Article 10.26, www.ustr.gov/sites/default/files/uploads/agreements/fta/peru/asset_upload_file78_9547.pdf (last visited March 7, 2011).

### E.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR SANCTIONS

The preceding sections of this brief demonstrate that these cases were removed properly under CREFAA, 9 U.S.C. § 205, based on well-grounded facts and law.  There is no basis whatever for sanctions.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Remand and Motion For Sanctions, Attorneys' Fees, and Costs should be denied.


Dated: March 7, 2011                    Respectfully submitted,

                                        **DOWD BENNETT LLP**

                                        By:  /s/ Edward L. Dowd, Jr.
                                        Edward L. Dowd, Jr.  #28785MO
                                        James F. Bennett  #46826MO
                                        Terrence J. O'Toole, #60446MO
                                        James E. Crowe, III  #50031MO
                                        7733 Forsyth Blvd., Suite 1410
                                        St. Louis, Missouri 63105
                                        Telephone:  (314) 889-7300
                                        Facsimile: (314) 863-2111

---

[9]  Article 10.28 of the TPA defines "New York Convention" to mean the *United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, done at New York, June 10, 1958.

E-mail: edowd@dowdbennett.com
         jbennett@dowdbennett.com
         tjotoole@dowdbennett.com
         jcrowe@dowdbennett.com

and

WILLIAMS VENKER & SANDERS LLC
Theodore J. Williams, Jr. #24498MO
100 N. Broadway Street, 21st Floor
St. Louis, Missouri  63102
Telephone:  (314) 345-5000
Facsimile:  (314) 345-5055
E-mail: twilliams@wvslaw.com

*Attorneys for Defendants The Renco Group, Inc.,*
*DR Acquisition Corp., Renco Holdings, Inc., and*
*Ira L. Rennert*

and

**LEWIS, RICE, & FINGERSH, L.C.**


By: /s/ Andrew Rothschild  (with permission)
     Andrew Rothschild, #23145MO
     Richard A. Ahrens, #24757MO
     Thomas P. Berra, Jr., #43399MO
     Michael J. Hickey, #47136MO
     600 Washington Avenue, Suite 2500
     St. Louis, Missouri 63101-1311
     Telephone:  (314) 444-7600
     Facsimile:  (314) 241-6056
     E-mail: arothschild@lewisrice.com
             rahrens@lewisrice.com
             tberra@lewisrice.com
             mhickey@lewisrice.com

*Attorneys for Defendants The Doe Run*
*Resources Corporation, Marvin K. Kaiser,*
*Albert Bruce Neil, Jeffery L. Zelms, Theodore*
*P. Fox III, and Daniel L. Vornberg*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was sent to counsel of record by operation of the CM/ECF System on this 7th day of March, 2011, as follows:

> *Counsel for Plaintiffs*
> Jerry Schlichter
> Roger C. Denton
> Kristine K. Kraft
> Elizabeth Wilkins
> Schlichter, Bogard & Denton
> 100 South 4th Street, Suite 900
> St. Louis, MO  63102

<u>/s/ Edward L. Dowd, Jr.</u>